IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN R. LIPPL,

      Appellant,                                14cv0676

                                                   **ELECTRONICALLY FILED**

      v.

INTERNATIONAL FIDELITY INSURANCE
COMPANY,

      Appellee

## Memorandum Opinion

**I.     Introduction**

This case is before the Court on appeal from a final order of the United States Bankruptcy Court for the Western District of Pennsylvania, the Honorable Thomas P. Agresti. The question presented is whether the Bankruptcy Court erred in granting the Motion of International Fidelity Insurance Company ("IFIC") to Compel Abandonment of Certain Estate Property ("Motion to Compel"), where the Bankruptcy Trustee represented on the record that he would not pursue the Construction Claims, IFIC said it would not pursue the Construction Claims, and John R. Lippl, an attorney who pursued the Construction Claims, who is no longer employed by the Bankruptcy Estate or the Bankruptcy Trustee, was the only party out of 300 creditors to file any response or objection. For the reasons that follow, the decision of the Bankruptcy Court will be affirmed.

**II.     Standard of Review**

Federal district courts exercise appellate jurisdiction over final judgments, orders and decrees entered by bankruptcy courts. 28 U.S.C. § 158(a)(1). Federal Rule of Bankruptcy Procedure 8013 provides that a reviewing court "may affirm, modify, or reverse a bankruptcy

judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013. "[A] bankruptcy court's legal determinations are reviewed *de novo*, its factual findings for clear error and its exercise of discretion for abuse." *Official Committee of Unsecured Creditors of J. Allen Steel Co. v. Nucor-Yamato Steel Co.*, 336 B.R. 226, 229 (W.D.Pa. 2005). "Mixed questions of fact and law must be broken down and reviewed under the applicable standard." *Titus v. Shearer*, 498 B.R. 508, 514 (W.D.Pa. 2013). The District Court acts as an appellate tribunal and is governed by traditional standards of appellate review when reviewing a decision of the Bankruptcy Court. Accordingly, the Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard, and its conclusions of law are reviewed *de novo*. *In re Four Three Oh, Inc.*, 256 F.3d 107, 112 (3d Cir. 2001); *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir.1998); Fed.R.Bankr.P. 8013.[1]

### III. Statement of the Case[2]

This appeal arises from the Order of Court dated April 24, 2014, by the United States Bankruptcy Court for the Western District of Pennsylvania wherein it granted IFIC's Motion to Compel Abandonment (doc. no. 1, citing doc. no. 646). In the Motion to Compel, IFIC sought an Order compelling the Chapter 7 Trustee for the Bankruptcy Estate of Flaherty Mechanical Contractors, LLC ("Trustee") to abandon its legal causes of action against the Board of Education of the School District of the City of Pittsburgh ("School District").

---

[1] Rule 8013 provides:
On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

[2] The statement of the case is not in dispute and the Court therefore mirrors the procedural history as set forth by Appellant in its Brief at doc. no. 3.

Flaherty Mechanical Contractors, LLC ("Debtor") had previously brought suit against the School District for alleged non-performance of certain contractual obligations under three (3) construction contracts between Debtor and the School District. These three (3) Construction Claim cases were filed in the Court of Common Pleas of Allegheny County. Prior to filing for bankruptcy, however, the Debtor employed attorney Appellant Lippl to litigate the Construction Claims against the School District.

The School District also sued the Debtor and IFIC on the two (2) construction projects that gave rise to the Construction Claims, also in state court. Therefore, a total of five (5) lawsuits were pending between the parties in State Court. The State Court litigation remained pending when IFIC filed the instant Motion to Compel Abandonment. IFIC requested the Bankruptcy Court to issue an Order compelling the Bankruptcy Trustee to abandon the Construction Claim to IFIC so that IFIC could potentially negotiate a "global settlement" of State Court Litigation (doc. no. 1-46/47). In connection therewith, IFIC served the Abandonment Motion on approximately 300 creditors and interested parties in the bankruptcy case, none of whom, with the sole of exception of Appellant Lippl, filed any response or objection thereto (doc. no. 1-51).

## IV. Procedural History of Bankruptcy Court Proceedings

On September 24, 2010 ("Relief Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Because the State Court litigation had commenced prior to the Relief Date, the Debtor filed an application to employ attorney Lippl as Special Counsel to pursue the State Court Litigation (doc. no. 1-2). The Bankruptcy Court approved Lippl to continue to represent the Debtor in State Court (doc. no. 1-5 ). On September 4, 2012, the Bankruptcy Court converted the Chapter 11 filing to a Chapter 7 and appointed the Trustee to

represent the estate in bankruptcy (doc. no. 1-59). Prior to conversion to Chapter 7, the Bankruptcy Court approved Lippl's first interim application for compensation and reimbursement of expenses in the total amount of $106,816,61 (doc. no. 1-12). After conversion and appointment of the Trustee, Lippl filed a Chapter 11 fee petition seeking approval of $8,624.50. After the Trustee objected (doc. no. 1-36), the Bankruptcy Court entered a modified order granting Lippl's Chapter 11 fee petition in a converted case in the amount of $8,624.50 (doc. no. 1-39).

After the State Court made a ruling against the Debtor during the liability phase of the Construction Claims, the Trustee then filed a Motion to Employ Special Counsel (David Donnelly, Esquire), as Special Counsel to the Trustee, to litigate the remainder of the Construction Claims. Lippl then filed a Response to the Application to Employ Donnelly (doc. no. 1-43/44) and by Order of Court dated February 7, 2013, the Bankruptcy Court granted the Trustee's Motion to Employ Donnelly as Special Counsel. (doc. no. 1-45).

While the damages portion of the Construction Claims and the School District Claims remained pending (for over a year) in the State Court litigation, on March 12, 2014, IFIC filed the Motion to Compel, seeking an Order by the Bankruptcy Court directing the Trustee to abandon the Construction Claims to IFIC so IFIC could negotiate a global settlement of the States Court Litigation (doc. no. 1-46/47/48).

On April 3, 2014, despite sending notice of 300 creditors, Appellant Lippl filed the sole response to the Motion to Compel and in it filed a Limited Response arguing that Movant failed to show by a preponderance that the claims are of inconsequential value and benefit to the estate, and that the claims are burdensome to the estate (doc. no. 1-51). Importantly, also on April 3, 2014, the Trustee filed a Response consenting to the relief requested in IFIC's Motion to Compel

(doc. no. 1-49). On April 10, 2014, the Bankruptcy Court held a hearing on IFIC's Motion to Compel, and since the representations made on the record in that hearing form the basis of this opinion, the Court finds it prudent to include the transcript of that hearing:

> MR. SPAGNOLO: Yes, Your Honor. As we set forth in the motion, this is a Motion to Compel the Trustee to abandon the Debtor's interest in certain underlying construction litigation. Essentially the underlying litigation were three lawsuits filed by the Debtor against the school district for the City of Pittsburgh, claiming wrongful termination on some construction projects. The Court of Common Pleas ruled that there was no wrongful termination, and the litigation is back down in the Court of Common Pleas.
> There's some related litigation filed by the school district against the Debtor and International Fidelity, also in the Court of Common Pleas, which we have referred to as the related lawsuits in my motion, and they are related in terms of preparation for trial only.
> Your Honor, I spoke with the Trustee before we filed this motion and walked him through. Essentially what we're asking for is an abandonment of all the Debtor's rights and interests in this litigation so that my client, International Fidelity, and in particular Mrs. Bentz, can attempt to have a global resolution of everything, both sets of lawsuits.
> And so, as Your Honor knows, the test is whether these particular assets have any value to the estate and, as we set forth in our motion, there is no value to the estate in these, primarily because the Debtor is not abandoning affirmative claims, per se. Even if the Debtor were abandoning affirmative claims, the question would be whether, even if the Debtor prevailed on these affirmative claims, there would be

anything above and beyond what would go to my client, International Fidelity, which would then come back to the estate.

And as we set forth in the motion, under applicable non-bankruptcy law, suretyship law, because we have an indemnification agreement from the Debtor and from the Debtor's principals, and under Supreme Court precedent, International Fidelity has the paramount lien in any proceeds from claims that it bonds. So, for example, as of today, my client is out of pocket approximately $2 million to complete the projects on this underlying litigation. There is potential bond exposure in the amount of an additional $2.7 million, and then there's related litigation in another Court which has potential exposure of an additional $4.2 million. So before the Bankruptcy Estate would see any monies, even assuming, for the sake of argument, that there were affirmative claims, there would have to be multi-million dollars in recovery.

And so we believe, therefore, that these claims are burdensome and of inconsequential value to the estate. And we talked to the Trustee ahead of time about this. Doing his due diligence, he wanted us to explain why we wanted to do this, and he felt better about us doing it in a motion, let everyone know, and so that's what we've done. And the only response, other than the Trustee's, has been by the lawyer who represented the Debtor in the underlying litigation, John Lippl, and if you'd like, I can stand down and have Mr. Lippl's attorney address that.

THE COURT: No, we'll do that. Let me talk to the Trustee first, okay. Mr. Shearer, are you comfortable now with what Mr. Spagnolo has related to us?

MR. SHEARER: Yes, I am, Your Honor. And not only based on his representations, but my discussions with special counsel. We're looking at the probabilities of success, and on that math we don't feel that there is a basis to oppose.

THE COURT: All right, okay, thank you. All right, Mr. Schimizzi.

MR. SCHIMIZZI: Thank you, Your Honor. Dan Schimizzi on behalf of John Lippl. Your Honor, just a very brief overview of our client's status in this case. Mr. Lippl began these lawsuits back in 2009. He had since been approved to represent the Debtor through the bankruptcy. He's filed two fee applications in this case, one on April 13th for $106,816.61, which was approved on June 1st. He filed a subsequent application on October 17th, 2012, which was also approved, subject to, I believe, any party's rights to object further in the amount of $8,624.50. Total approved fees, subject to a limited objection, would be approximately $115,000.

Your Honor, my client's involvement in this case, he has expended tremendous sums. He is out approximately $15,000 in hard expenses that he's incurred through this. He has had the assistance of IFIC in prosecuting these State Court claims, and what essentially happened was these claims were bifurcated into two phases. The first was the liability phase, which I believe Mr. Spagnolo indicated, my client was not successful in litigating. Thereafter an appeal was taken to the Commonwealth Court which was quashed because the damages phase had not yet reached a final decision.

At this point I believe both of those actions are still pending. There's an appeal that could go at the conclusion of the damages phase.

THE COURT: **All right, Mr. Schimizzi, please. Do you disagree that there'd have to be a multi -- excess of $4 million, it sounds like, of recovery before your client -- the estate would even see a penny, and then to the extent your client would share in some sort of distribution with other creditors, he'd only get a fraction? Let's be realistic here. What's the likelihood of there ever being a recovery for the benefit of the estate? The Trustee, who I appointed for this very purpose, has already agreed that it's probably never going to happen. I mean, anything is possible, but for there to be a recovery by your client -- and your client took these cases knowing full well that there was a contingency matter. I mean, a part of his fee is on a contingency as I recall. So, I mean, everybody knew when they got started that this was a long shot.**

MR. SCHIMIZZI: I believe that's -- I wasn't around when this got started, Your Honor, but I believe that's fair.

THE COURT: That's all right. I'm not blaming anybody for it. It just -- it got started, a lot of time and effort was put into it, it was a valiant fight, but there's nothing left.

MR. SCHIMIZZI: Well, Your Honor, I think just to follow up on that, I believe that, if my understanding and my communications with attorneys for IFIC are correct, that if this did go through to appeal, was reversed and came back down, and the liability phase of the Trial Court was found in favor of IFIC, that would be a defense to the subsequent and related matters that I believe the bonds are currently in excess of approximately $8 million of exposure for. So I think there is some incentive to it. But moreover, I think one aspect --

THE COURT: What is the likelihood? You know, if I hit the lottery tomorrow and got 300 -- the PowerBall and got $400 million, I'd be on a boat in the south -- the Carribean somewhere, okay? It ain't going to happen, though.

MR. SCHIMIZZI: And -- I apologize, Your Honor.

THE COURT: No, that's all right. I just -- let's be realistic here, right. You know, we're being -- it's highly speculative what -- your fellow gave it a good shot. He wasn't successful before; now it's back and at some point there's -- you know, the law, you know, should encourage settlement and resolution, and tilting at windmills isn't something that we should be -- the business we should be getting into.

MR. SCHIMIZZI: That's fair, and I think, Your Honor, just again, to follow up on that, you know, the one position that we discussed was that, you know, if there is an abandonment of these claims, we believe the purpose IFIC is seeking this is to limit their overall exposure. So if acquiring these State Court claims that are now pending for appeal on the damages phases can help reduce their overall exposure, then the question would become, is there any value that they should be paying to the estate in order to acquire those claims. And that's one of the positions we discussed. And the alternative is --

THE COURT: That's why we have a Trustee, and the Trustee has recommended that -- you know, by the same token, I don't endorse the concept of, you know, blackmail or extortion, or holding somebody up either. If you've got a legitimate basis for, you know, eking out a payment to the estate, then go for it. I don't think we're at the legitimate threshold any longer.

9

MR. SCHIMIZZI: And I hope I didn't imply blackmail or extortion, I was just saying if there is --

THE COURT: No, no, you didn't at all, but I reduced it to the absurd, okay, to try and make a point.

MR. SCHIMIZZI: I understand.

THE COURT: **But the thing is here, that's why the Court appointed the Trustee. And I have to give great deference to the Trustee's opinion in this regard.**

MR. SCHIMIZZI: And I guess the final point that I would have is that Mr. Lippl would have an interest, if it was to be abandoned, to possibly consider abandonment to his claim, the claims to him to pursue this if that would be of any consideration.

THE COURT: Where would you pursue it? The claim is in the Bankruptcy Court.

MR. SCHIMIZZI: Well, to pursue the State Court actions if they're abandoned, to either try the damages phase or take the appeal to see if he can be successful and --

THE COURT: I don't even know what role he plays in this thing. Is he still involved? Is he --

THE COURT: Who does he represent, the Debtor?

MR. SCHIMIZZI: He formerly represented the Debtor as special counsel on the State Court claims.

THE COURT: Okay.

MR. SCHIMIZZI: Thereafter –

THE COURT: He is -- in this bankruptcy. So he really has no standing after that.

MR. SCHIMIZZI: After --

THE COURT: Now the Debtor is represented, if you will, in a fiduciary capacity by the Chapter 7 Trustee.

MR. SCHIMIZZI: And to the --

THE COURT: **So really, Mr. Lippl doesn't have any standing to pursue this on his own. He was a representative of the Bankruptcy Estate, and that Bankruptcy Estate is now handled and controlled by the Chapter 7 Trustee, who's chosen not to go forward. So he doesn't have a client anymore**.

MR. SCHIMIZZI: At this point, that appears to be the case, except he would like to be reinstated or reinvolved, if possible.

THE COURT: I know. No, I think -- we gave him a -- he had a -- he had his opportunity, he took his best shot. You know, I would have loved to have seen the positive results so he could have gotten paid, but it didn't happen. And now we have to -- you know, there's a matter of finality here in resolution and fairness, and all you've been able to -- and quite well, you've done quite well as an advocate, is to argue some speculative relief that potentially may arise down the road, assuming a number of things come together that there's a pretty good chance will never come together. And so based on that line of probabilities, I can't -- especially in light of the Trustee's recommendation, I feel compelled to grant the motion. Do you have any law that supports what you're saying?

MR. SCHIMIZZI: I could ask for -- to brief an issue for you. I don't have any at hand right now, no, Your Honor.

THE COURT: Well, do you really want to brief it? I mean, poor Mr. Lippl has already lost enough money, now he's got to pay you to do this? I assume; maybe not. But if you want an opportunity to brief it, I'll take briefs on it.

MR. SCHIMIZZI: I can't say for certain whether that would be in the best -- if the Court is inclined to rule in favor of the Trustee.

THE COURT: Well, I am, but I keep a -- you know,

try and keep an open mind here. I just don't see it, in light of the history of this case, **and I think had the Trustee come in and advocated your position, and after his thoughtful and extensive review, I would feel -- even then I would have a hard time going along with it, but I probably would defer to the Trustee. But he came in with a contrary view after, I'm sure, giving much thought to the situation, and I think, under the circumstances, as long as this matter -- I mean, this is a 2010 case. I let this case continue much longer than I typically do in order to give Mr. Lippl and the litigation a chance. And now, for this litigation to succeed, unless you knock out the -- International Fidelity's position, which, you know, that's a Hail Mary pass, it sounds like, you know, there's a lot of moving parts to it, there's no way that this is going to result in -- to the point that this estate gets funded. And the best for everybody, I think, under the circumstances, get this litigation resolved, get the State Court litigation resolved.**

Mr. Spagnolo, have you discussed anything with Mr. Schimizzi as far as his issues? I mean, sometimes, you know, maybe it makes sense for you to throw Mr. Lippl a bone or something here. Wouldn't -- I mean, that happens in the past. Did you ever think of that? Maybe I ought to give you guys some time to go out and talk about that.

Doc. No. 1- 55 (emphasis added).

Following the above argument by counsel on the record, the Bankruptcy Court continued the Motion to Compel for two (2) weeks to allow Lippl and IFIC an opportunity to reach an agreement that would resolve Lippl's Response to the Motion to Compel.

Unfortunately, the parties were unable to come to terms on an acceptable resolution. Then, on April 24, 2013, the Bankruptcy Court briefly reconvened the hearing on the Motion to Compel and granted IFIC's Motion to Compel Abandonment (doc. no. 1-57).

V.     **Discussion**

Title 11 United States Code Section 554(b) governs abandonment of property, and provides in relevant part, "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. §554(b). The parties agree that the burden is on the movant, here IFIC, to make out a prima facie case supporting abandonment. *In Re Taggart,* 2013 WL 392452, *1, fn4 (Bankr. D. N.J. Jan. 31, 2013)(citing *In re Paolella*, 79 B.R. 607, 610 (Bankr. E.D. Pa. 1987)). The movant's case may then be rebutted with evidence that the estate does have equity in the property. *Id.* In order to compel abandonment, the movant must prove its case by a preponderance of the evidence. *Id.*

IFIC had the burden to set forth a prima facie case that the Construction Claims were of inconsequential value to the Bankruptcy Estate. While Appellant argues that IFIC failed to do so, this Court disagrees, and finds that the record contains sufficient evidence to support the Abandonment Motion.[3] Simply put, the representations made on the record by the Bankruptcy Trustee more than adequately set forth a prima facie case. The Bankruptcy Trustee addressed the Bankruptcy Judge in open court as well as in its filings, that in an exercise of his business judgment, after consultation with his special counsel, that after investigating the Construction Claims, it was appropriate to consent to the Abandonment Motion. The Bankruptcy Trustee also

---

[3] Appellant Lippl argues in this Bankruptcy Appeal, that the IFIC introduced no evidence or testimony to prove that the Claims were of inconsequential value, were burdensome, nor did the IFIC present "testimony as to the disputed material facts." Doc. No. 3. As noted below, Lippl set forth no genuinely disputed material facts.

13

filed a consent to the Motion to Compel, stating the same (doc. no. 1-49). These representations made in open court, and as an officer of the Court, constitute a prima facie showing in support of the Movant's Motion to Compel Abandonment, and the Bankruptcy Court Judge expressly stated that he gave great deference to the Trustee's opinion regarding abandonment of the property of the estate. The Bankruptcy Court, being the finder of fact, is afforded deference in its credibility determinations. Additionally, the Bankruptcy Court observed that Lippl's opposition was not motivated by desire to protect the interest of the creditor body, only that he was motivated to collect his attorney's fees and costs from IFIC.[4]

The IFIC adequately set forth a prima facie showing on the Motion to Compel Abandonment under Section 554(b). In order to rebut this showing, Lippl would have needed to set forth *some* contrary evidence that the estate indeed has equity in the property at issue. Lippl, however (through his attorney), made no such attempt. He did not dispute any of the representations made by the Bankruptcy Trustee, he did not seek to cross-examine the Trustee (after placing him on the stand), he did not offer any rebuttal evidence or testimony of his own, he declined the Court's mention of submitting a supplemental brief, and he never requested discovery. Therefore, there is no evidence that the record indeed contains "disputed factual issues." *See In re Twisselman*, 2012 WL 8249605 (Bankr. Ct. E.D. California August 23, 2012) (in ruling on a request for judgment under F.R.C.P. 52(c), evidence by offer of proof was sufficient. The Court was not required to receive live testimony.)[5]

---

[4] Moreover, the Bankruptcy Court accurately noted that as a practical matter, because Lippl is no longer employed by the Bankruptcy Estate or the Bankruptcy Trustee, he has no standing to pursue the Construction Claims, and therefore, even if the Court reversed the Abandonment Order, Lippl could not adequately pursue any relief.

[5] The Court finds the *In re Brannan* case cited by Appellant to be inapplicable, because in that case, unlike the present situation, the Bankruptcy Court Order was vacated on the basis that it "made no findings, nor is there a basis in the record for the findings." In Re Brannan, 5. B.R.

**VI.** **Conclusion**

The Court finds that the record adequately supports the Bankruptcy Court's findings that the Construction Claims were burdensome, and of inconsequential value, and of no benefit to the Bankruptcy Estate. Lippl has offered no evidence to the contrary and, therefore, has failed to create a genuine issue of material fact. Accordingly, the Order by the Bankruptcy Judge on the Motion to Compel Abandonment will be AFFIRMED. An appropriate Order follows.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties

---

505, 506 (D.C. V.I. 1980). Here, the Bankruptcy Court made specific findings based upon the evidence before it, including the representations of an officer of the Court.